Robert J. deBrauwere: rdebrauwere@pryorcashman.com
Eric D. Dowell: edowell@pryorcashman.com
PRYOR CASHMAN LLP
7 Times Square
New York, New York 10036-6569
Telephone: (212) 421-4100
Facsimile: (212) 326-0806
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------X
                                                  :
CARSON OPTICAL, INC.                              :     **Civil Action No.**
                                                  :     **2:12-cv-01169-JS-GRB**
                Plaintiff,                        :
                                                  :
        V.                                        :     **DECLARATION OF**
                                                  :     **ROBERT J. DEBRAUWERE**
HAWK IMPORTERS, INC.                              :     **IN OPPOSITION**
SHYAM BAHETI and RAM BAHETI                       :
                                                  :
                Defendants,                       :
                                                  :
-------------------------------------------------X

ROBERT J. DEBRAUWERE declares:

1. I am a member of the bar of this Court and of the firm Pryor Cashman LLP, counsel for plaintiff Carson Optical, Inc. ("Carson"). I respectfully submit this Declaration in opposition to the motion of defendants Hawk Importers, Inc., Ram Baheti and Shyam Baheti (collectively, "Hawk") to transfer venue from this District to the Central District of California (the "Motion").

2. Hawk argues that the Motion should be granted, among other reasons, because the Taiwanese inventors of the patents at issue supposedly could be called as witnesses, and New York is 1,000 miles further from Taiwan than is Los Angeles. But to the extent that the

2

inventors' location is relevant to the Court's analysis, it should be aware that the difference between flights from Taiwan to Los Angeles versus those to New York is essentially irrelevant for a trip of that length. Specifically, an internet search confirms that it takes an entire day to fly from Tapei to either city.

3. Hawk also argues that change of venue is appropriate because the Central District of California supposedly "fast tracks" patent cases. This point is highly misleading. Annexed hereto as **Exhibit A** is a true and correct copy of an article from the Daily Journal entitled "Central District Struggles In Its Role as Top Patent Venue," which among other things explains that patent cases in the Central District tend to proceed on a comparatively faster track as a result of the absence of applicable local rules; not because of a deliberately imposed "fast track" program. The article also cites data showing that rulings out of the Central District "do not hold up as well under appellate scrutiny as other popular patent jurisdictions" and notes that a "significant percentage of Central District judges have a reputation for not liking patent cases or even patent litigators."

4. Hawk suggests that counsel for Carson will not be inconvenienced by a change of venue because Pryor Cashman has an office in Los Angeles. What this argument ignores is that the Los Angeles office is staffed by only two full time attorneys, neither of whom have anything to do with this action. Conversely, Hawk fails to disclose that it already is represented by New York counsel in another litigation between the parties that currently is pending in this District: *Cameron Int'l Trading Co. d/b/a Carson Optical v. Hawk Importers, Inc.*, 03 Civ. 2496 (Seybert, J.).

I declare under penalty of perjury that the foregoing is true and correct.

Date:   New York, New York
       June 7, 2012

_____
Robert J. deBrauwere

# EXHIBIT A

**Daily Journal**   Classifieds/Jobs/Office Space : Experts/Services : CLE : Search : Logout

WEDNESDAY   THURSDAY   FRIDAY   TUESDAY   TODAY                Questions and Comments

SEARCH/BACK to search results

Bookmark  Reprints

This is the property of the Daily Journal Corporation and fully protected by copyright. It is made available only to Daily Journal subscribers for personal or collaborative purposes and may not be distributed, reproduced, modified, stored or transferred without written permission. Please click "Reprint" to order presentation-ready copies to distribute to clients or use in commercial marketing materials or for permission to post on a website.

Wednesday, April 7, 2010

# Central District Struggles In Its Role as Top Patent Venue

**By Craig Anderson**

At the opening of a self-help legal clinic last year, U.S. District Judge A. Howard Matz of Los Angeles told pro se litigants he empathized with their efforts to represent themselves in federal court without legal training.

"That's the same feeling I have when I see a patent case," Matz said, drawing chuckles from a crowd of attorneys and judges, according to several people in attendance.

Matz's comment was meant as a joke. But it also pointed to a longstanding problem in the Central District of California: Many judges in this massive federal district, which recently surpassed the Eastern District of Texas to become the most popular venue for patent infringement lawsuits in the nation, have shown little appetite for digging into these tedious, complicated and demanding cases.

Judges in the Los Angeles-based district have refused to set local rules for patent cases, as their counterparts in the Northern District and a growing number of jurisdictions across the country have done. And now many attorneys say they would rather avoid trying patent cases in a district that has an overcrowded calendar, lacks consistent procedures for handling patent litigation, and includes too many judges who openly resent their time-consuming complexity.

"Despite the many fine jurists who I know and respect in the Central District - and my preference to stay close to home - I rarely can recommend filing new patent cases here," said Robert Krupka, a Los Angeles-based partner with Kirkland & Ellis who has tried patent cases for years.

The Central District's track record may have something to do with it. Judicial rulings there are overturned on appeal at a higher rate than any other district that handles large numbers of such cases, according to two recent academic studies.

The sprawling Central District - which includes Los Angeles, Orange, Riverside, San Bernardino, San Luis Obispo, Santa Barbara and Ventura counties - is home to a lot of American companies with intellectual property to protect, as well as subsidiaries of Asian corporations and local patent holding companies. The district has nearly 30 judges, one of the largest benches of any jurisdiction in the nation.

"It's quite a big box of chocolates," said a Bay Area litigator who asked not to be identified but whose comments about the Central District bench were echoed in dozens of interviews with patent litigators.

Further, patent cases in the Central District often pit mid-sized companies against each other in legal battles that lack the sizzle of big-money patent litigation fights involving Silicon Valley companies or well-financed patent holding companies that take place in San Jose, Chicago, or the tiny patent hotbed of Marshall, Texas.

In Silicon Valley, technology companies are major players and the outcome of their patent litigation is seen as quite important. In Los Angeles, real-life Hollywood stars, movie studios and entertainment conglomerates wage copyright and trademark battles that attract a lot more interest, said Mark Scarsi, a partner at Milbank, Tweed, Hadley & McCloy's Los Angeles office.

"Patent cases in the Central District are not nearly as sexy as in Texas or in the Northern District of California," Scarsi said. "Patent cases are not going to draw headlines and they are very labor-intensive."

The district never has made any particular effort to attract plaintiffs who file the complaints. It is not like the District of Delaware, with a long history of handling



MICHAEL G. GERNER
A PROFESSIONAL LAW CORPORATION
• 30+ YEARS EXPERIENCE
• STATE BAR OF CALIFORNIA
• FORMER ASST. CHIEF TRIAL COUNSEL

**STATE BAR DEFENSE**
■ Attorney Discipline ■ Admissions
■ Reinstatements ■ Ethics Consultations
■ Conviction Referrals

MGG Ethics   310-556-1300
             mggethics@msn.com

Imagine ...
An Independent Mediation Practice,
Redesigned, Reformed and Renewed!

**Jeff KICHAVEN**
"The Way Mediation Ought to Be"
888-425-2520   www.jeffkichaven.com

complex civil litigation, or the Eastern District of Texas, which made a concerted effort during the past decade to draw patent cases to a largely rural area due to the efforts of judges there.

The Eastern District of Texas, where plaintiffs can essentially pick their judge and where large jury awards became common, had surpassed the Central District several years ago as the venue with the most complaints filed. But because the sheer volume slowed the time it took for cases to go to trial, as well as recent appellate rulings that make it easier for defendants to transfer cases out of Texas, the Central District reassumed its top spot in number of patent filings last year.

Aside from the large number of companies in the Los Angeles area, the biggest attraction of the Central District for many patent plaintiffs is most judges' willingness to set trial dates about a year after the case is filed. That's much faster than cases in the Northern District of California or Eastern District of Texas, where it can take two or three years.

"What's most important [to a plaintiff] is getting an early trial date," said Lynn Pasahow, a Mountain View-based partner with Fenwick & West.

While it is difficult to measure the performance of judges in any particular district, two law professors have collected statistical data that suggests that rulings out of the Central District do not hold up as well under appellate scrutiny as other popular patent jurisdictions.

David Schwartz, an assistant professor at Chicago-Kent College of Law, wrote two academic papers in 2008 and 2009 studying the reversal rates by the Federal Circuit of judges across the nation to determine whether a judge's experience would affect how often he or she was reversed.

Schwartz updated his data at the request of the Daily Journal so that it includes an evaluation of all Federal Circuit claim construction appeals from 2000 through 2008.

Claim construction decisions by Central District judges were reversed, vacated or remanded 46.3 percent of the time out of 67 decisions analyzed. That was higher than any of the other top 13 districts, most of which were reversed no more than a third of the time.

The Northern District, which had 72 claim construction appeals, was reversed or remanded 29.2 percent of the time. The Northern District of Illinois, which had 58 appeals, was reversed or remanded 29.3 percent. The District of Delaware was reversed or remanded just 22.2 percent of the time.

Judges in the Southern District of California, with only 13 appeals, were reversed or remanded 30.8 percent of the time.

The Central District also does not fare well in statistics compiled by Jay Kesan, a professor at the University of Illinois College of Law who evaluated Federal Circuit appeals of all patent cases filed between 1995 and 2003 in rulings filed as recently as 2007.

Of the 10 most popular patent venues, Central District patent rulings were fully affirmed by the Federal Circuit 41 percent of the time - the only one of the top 10 jurisdictions that was affirmed less than half the time. The Northern District, on the other hand, was affirmed 69 percent of the time, one of the highest rates in the nation.

Kesan's study evaluates rulings that date to the mid-1990s, and Schwartz's is limited to claim construction appeals. Both men acknowledge they counted the cases differently, but Schwartz said he is intrigued by the findings.

"Whatever we've done differently, we are finding the same thing," Schwartz said. Both professors declined to reveal data about the reversal rate of individual judges.

The court's leaders say they are aware of problems within the system, and U.S. District Judge Audrey Collins, the chief judge of the Central District, said jurists would consider proposals later this month at a seminar.

"This is as good a time as any to look at the issue and we will be," Collins said.

U.S. District Judge Christina Snyder, who heads the Central District's rules committee, said U.S. District Judge Mariana Pfaelzer - a veteran jurist, now on senior status, who is highly-respected for her expertise and willingness to handle complex patent cases - was asked last year to make recommendations to improve the system.

"We're trying to come forward with proposals that everyone can live with," Snyder said.

Asked about the results of Kesan's and Schwartz's studies, Collins said she has "no idea" why the Central District appears to lag behind other popular patent jurisdictions.

But one factor that many attorneys say plays a role is the Central District's refusal to adopt local rules.

Unlike most other metropolitan districts with heavy patent calendars, the Central District does not have districtwide rules that all judges are supposed to follow - rules that some attorneys say slow the process and raise the costs for plaintiffs.

"In opting against the universal adoption of patent local rules, the judges may be inviting more than their fair share of patent cases," according to Luke Dauchot, a Los Angeles-based partner at Kirkland & Ellis.

Among popular patent venues, the Central District is increasingly isolated in its aversion to such rules. Several popular patent venues, including the Northern District of Illinois and the District of New Jersey, recently adopted rules that follow the guidelines first established by the Northern District of California in 2001.

The rules are not identical in each district, but establish a procedure that each patent infringement case is designed to follow. A few months after a complaint is filed, plaintiffs are required to file papers outlining their asserted claims and infringement contentions.

Defendants must respond with legal arguments why the patents are invalid. The process continues until the judge determines the meaning of any disputed claim terms in the patent in what is known as a Markman hearing.

"Judges in the Northern District are very strict with those rules," said Mike Molano, a Menlo Park-based partner with Sheppard Mullin Richter & Hampton.

Some judges in the Central District adopt Northern District-style rules for patent lawsuits, but others do not, or decide on a case-by-case basis. This creates uncertainty, which sometimes works in favor of plaintiffs by allowing them to take discovery and run up defense costs. Some defendants will settle cases quickly to avoid the expense, attorneys said.

But plaintiffs' attorneys say the absence of rules often works against them, especially if they have a strong case.

"I think patent local rules are reassuring to plaintiffs because you know what you're going to be dealing with, and how quickly the pretrial motions are going to move along," said Doug Cawley, a Dallas-based partner at McKool Smith who usually represents plaintiffs in big-money cases.

"At least in the Northern District, you will have some guidance of how the case is going to progress," he added.

And then there is the judges' attitude toward patent cases.

A significant percentage of Central District judges have a reputation for not liking patent cases or even patent litigators.

U.S. District Judge Percy Anderson of Los Angeles grew frustrated during an October 2008 scheduling conference in a patent case between Mag Instrument Inc. and several defendants.

"Well, you know, generally my experience with patent cases is that for some reason patent lawyers love to fight about everything, and normally you can't agree on even what day it is," Anderson said, according to a transcript of the hearing.

Anderson did not return telephone calls seeking comment.

Judge Stephen Wilson, in an interview last week, complained patent litigators won't stop being advocates when he holds tutorials to try to better understand the technology.

"They won't take their advocacy hats off," he said. "The gamesmenship, unless the court gets a grip on the technology, is hard to control."

Wilson said he is not a fan of patent local rules.

"Setting up some format for the litigation is form over substance," he said. "I don't think rules are the answer. The Federal Rules of Civil Procedure are very adequate."

Several attorneys said they have experienced similar comments from other Central District judges.

"That view is common on the bench," said a Los Angeles patent litigator who asked not to be identified. "The attitude is not unique to judges in the Central District, but judges in other districts have a level of comfort where they know how to deal with them."

Many attorneys say they sympathize with the dilemma of judges who must juggle patent complaints with a heavy criminal calendars that are "choked with drug cases" and have statutory priority over civil cases, said Wayne Barsky, a Los Angeles-based partner with Gibson, Dunn & Crutcher.

"We ask our Central District judges to shoulder a very heavy burden," Barsky said. "So I fully understand the resistance by some judges to the adoption of patent local rules, but such rules need not be inflexible, and they would bring a measure of predictability and uniformity to the process."

Stephen Larson, who resigned last September after three years as a Central District judge and is now working as a partner at Los Angeles-based Girardi & Keese, said "it's an ingrained instinct for judges to want to have as much flexibility as possible to manage their cases."

He cautiously supports some form of local rules so that patent lawyers have more predictability but warns judges to weigh any changes "against the delay and other unintended consequences that might flow from such changes."

U.S. District Judge Andrew Guilford of Santa Ana also expressed cautious support for some form of local rules, although he also wants to maintain judicial flexibility. "My own view is that we should do it," he said.

Dauchot, while supportive of patent local rules as well and supportive of the judges' upcoming seminar, warned that they are not a "panacea," saying a longer-term solution would be reforms that would steer patent cases to a group of judges within the district who specialize in handling them.

Such reforms, which have been supported in legislation authored by U.S. Rep. Darrell Issa, R-Vista, have run into resistance from judges who do not like the idea of treating patent cases too much differently than other civil litigation.

But Dauchot said it would make a big difference in how patent lawsuits are handled. "That would be a game-changer," he said.